

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

Honorable Weldon B. Davis
County Attorney
Austin County
Bellville, Texas

Dear Sir:

Opinion No. 0-3225
Re: Classification and order
of payment of claim for
State and county ad valorem
taxes against insolvent
decedent's estate, and its
priority over lien creditors.

Your letter of February 26, 1941, submits for our opinion the following questions which we quote from your letter, together with the attending facts:

"In order that I may correctly advise the Tax Collector-Assessor of Austin County I would like to have your opinion in regard to the following question:

"In the latter part of December, 1938, John Starney, a resident of this county, died. At the time of his death and for eight or ten years prior to his death he operated a retail drygoods store in Bellville. He died intestate. Shortly after his death application for administration was made and letters of administration was granted. At the time of his death he was indebted to various persons besides a large amount of delinquent taxes owing to the city and school and state and county. State and county taxes were delinquent for six or eight years. Very soon after the administrator had qualified as such the Tax Collector-Assessor of Austin County presented a claim to the administrator for state and county taxes which claim was allowed by the administrator and approved by the county judge at the time of its presentation and said claim was then classified as a first class claim against the estate. However, at a later date a motion was filed in the county court

asking that this claim for state and county taxes be reduced to a third class claim and upon a hearing of that motion the state and county tax claim was reduced to a third class claim and placed on a level with the claims of general creditors. The estate is insolvent. The exact question thus presented is, is a tax claim a first class or third class claim and if a third class claim does a tax claim, and more especially a claim for state and county taxes, have priority over claim of general creditors?

"In briefing the question I have concluded that under the provisions of Article 3531 of the Revised Civil Statutes of Texas relating to the classification of claims as well as under the provisions of Article 7269 of the Revised Civil Statutes of Texas relating to tax liens, the Court in reclassifying these claims did not error in reducing this claim for state and county taxes to a third class claim.

"And now in regard to that part of the question relating to priority of tax claims over those of general creditors I have concluded that it would depend upon whose claim was senior. Reference - Salt City Co. v. Padgett et al, Vol. 186 S.W. 391."

In determining the classification for payment, of State and county ad valorem taxes, becoming delinquent during the lifetime of the decedent, John Starney, we must ever keep in mind the distinction between such taxes as had been assessed and were a charge against each particular and separate tract of real estate, and all taxes due generally by decedent or his estate, on both realty and personalty, without reference to the particular property against which it was assessed. A different classification or order of payment from decedent's estate obtains between the two types of taxes, as hereinafter discussed.

With reference to taxes assessed against a particular tract or parcel of land, Article 8, Section 15, Constitution of Texas, provides that "the annual assessment made upon landed property shall be a special lien thereon." The

Legislature of Texas has enacted a declaratory statute, but the lien which becomes a charge upon each separate tract of real estate to secure the taxes assessed against same, arises not by virtue of this statute but by this constitutional provision. Therefore, it is our position that the Legislature cannot defer or subordinate this special constitutional lien by any mere statutory direction that other claims against a deceased's estate shall be first paid, nor do we think it was the intention of the Legislature to do this by the enactment of Article 3531, Revised Civil Statutes, providing the following classification of claims:

"The claim against an estate shall be classed and have priority of payments as follows:

"1. Funeral expenses and expenses of last sickness for a reasonable amount, to be approved by the County Judge, not to exceed the sum of Five Hundred ($500.00) Dollars; any excess to be classified and paid as other unsecured claims.

"2. Expenses of administration and expenses incurred in preservation, safekeeping and management of the estate.

"3. Claims secured by mortgage or other liens so far as the same can be paid out of the proceeds of the property subject to such mortgage or other lien, and when more than one mortgage or lien shall exist upon the same property the oldest shall be first paid; but no preference shall be given to such claims secured by mortgage or other lien further than regards the property subject to such mortgage or other lien.

"4. All claims legally exhibited within one (1) year after the original grant of letters testamentary or of administration.

"5. All claims legally exhibited after the lapse of one (1) year from the original grant of letters testamentary or of administration."

While not strictly a claim against the estate, allowances to widow and minor children are, by Article 3533, Revised Civil Statutes, directed to be paid, along with funeral expenses of administration, etc., prior to claims secured by lien under the third class fixed by Article 3531, Revised Civil Statutes.

Honorable Weldon B. Davis, Page 4

        At first view it would appear that the judgment
of the Probate Court and the opinion expressed in your letter
is the correct one, because, admittedly, State and county
taxes on realty constitute "claims secured by mortgage or
other liens," so as to fall within the third classification
of the above article, as being the only one applicable. But
strictly speaking, we do not believe taxes should be consider-
ed as a claim or debt against decedent's estate, within the
purview of such priority statute, because taxes are imposed
levied by sovereign power and without any voluntary action on
the part of the taxpayer in contracting or incurring such
obligation. For this reason and because of this distinction,
we think it is the duty of an executor or administrator to
seek out and pay, in the order hereinafter discussed, all
delinquent taxes justly due and owing, without the necessity
of such tax claims being filed and ranked under the statutes
applicable to the debts and claims of creditors of the estate
generally.

        This is the only construction which will sustain
the validity of Article 3531, Revised Civil Statutes, because
if taxes assessed against real estate are postponed in pay-
ment of funeral expenses and expenses of last sickness, allow-
ances to the widow and minor children, expenses of adminis-
tration and expenses incurred in preservation, safekeeping and
management of the estate, as being a claim secured by lien,
within the meaning of Section 3 of said Article, we would be
constrained to hold same unconstitutional. Funeral expenses
and expenses of last sickness, allowances to widow and minor
children, and expenses of administration, etc., are not secured
by any constitutional lien or provision according them a prior-
ity, and hence we do not think the Legislature could consti-
tutionally prefer them in payment over the special lien on
landed property created by Article 8, Section 15, of the
Constitution to secure taxes annually assessed against such
property.

        This conclusion finds further support by considering
the status of a vendor's lien against land belonging to a
decedent's estate. It is a general rule that a vendor who
holds an established claim secured by a vendor's lien for the
purchase price of property is entitled to have his claim
classified above all others and to have priority of payment.
Thus it appears that a claim of this kind, which is secured
by the superior title to land, has precedence in the order
of payment over allowances, general expenses and expenses of

Honorable Weldon B. Davis, Page 5

last illness, expenses incurred in the preservation, safe-
keeping and management of the estate, other preferred claims,
and, indeed, over claims of all classes. 14 Tex. Jur., page
172, (Decedent's Estates, Sec. 391). _

The constitutional tax lien securing State and County
ad valorem taxes assessed against real estate, being, beyond
all doubt, prior and paramount to vendor's liens, and vendor's
liens, under the above established principle, being prior and
paramount to each and all of the claims classified by Article
3531, Revised Civil Statutes, it is but a logical step in the
reasoning to hold that such tax liens prior and paramount to
the claims of creditors classified by such article. Any other
conclusion would produce an anomaly.

But unlike taxes assessed against a particular tract
or parcel of real estate, hereinabove discussed, taxes due
generally by a decedent or his estate, on all realty and per-
sonalty, without reference or regard to the particular  pro-
perty against which they are assessed, are not prior and
preferred to all of the claims whose priority and payment is
fixed by Articles 3531 and 3533, Revised Civil Statutes.
However, the status for payment of such taxes is not controlled
by said Articles but rather by Article 7269, Revised Civil
Statutes, reading, in part, as follows:

"In all cases where a taxpayer makes an assign-
ment of his property for the payment of his debts,
or where his property is levied upon by creditors,
by writs of attachments or otherwise, or where the
estate of a decedent is or becomes insolvent, and
the taxes assessed against such person or property,
or against any of his estate remain unpaid in part
or in whole, the amount of such unpaid taxes shall
be a first lien upon all such property; provided,
that when taxes are due by an estate of a deceased
person, the lien herein provided for shall be sub-
ject to the allowances to widows and minors, funeral
expenses, and expenses of last sickness. Such un-
paid taxes shall be paid by the assignee, when
said property has been seized by the sheriff, out
of the proceeds of sale in case such property has
been seized under attachment or other writ, and
by the administrator or other legal representa-
tive of decedents; . . ."

This distinction is well pointed out by the following language of the court in the case of State v. Jordan et al., 60 S.W. 1008, holding that State and county taxes were a special and preferred lien upon a certain tract of land against which they were assessed, prior to an allowance to widow in lieu of homestead, but that all other taxes were controlled, as to priority, by the provisions of the statute next above quoted:

". . . It is plain to our minds that article 5175a does not amount to an exemption, for it does not undertake to repeal any other legislation bearing upon the subject. Its evident purpose was to aid the state in the collection of her taxes, and it was not enacted for the benefit of individuals. It should be borne in mind that, until the last-named article was enacted, the state in no event had a lien on personal property for taxes, nor upon real estate except for the taxes due upon each separate piece. The effect of the article was to give the state a lien upon all the property of an estate or individual (under the circumstances named in the article), so that all the property should be under a preference lien for all the taxes due by the individual or estate, without reference to the particular property against which it was assessed. To impose this new and additional lien upon the homestead and allowances to the widow and children would have contravened the provision of the constitution protecting the homestead against all taxes save its own. With this fact kept in view, the necessity for and meaning of the proviso become plain. The exemption was from the new lien created by the article itself. We are of opinion that the court erred in holding that the proviso exempted the allowance from the taxes due thereon. Our former decree is, therefore, so modified and reformed as to reverse the judgment of the trial court, and to here render judgment for appellant, establishing the claim for taxes as sued for, establishing the lien upon the property in question as superior to the homestead allowance, and decreeing that the judgment be certified to the probate court of Galveston county to be paid in due course of administration."

Honorable Weldon B. Davis, Page 7

You next request our opinion upon the priority of State and county ad valorem taxes over the claims of "general creditors." We assume you refer to "claims secured by mortgage or other liens," described under the third classification of Article 3531, Revised Civil Statutes, rather than unsecured claims under the fourth classification, usually referred to as general creditors. Otherwise, no question would be presented because all taxes involved here, being secured by a lien would be patently prior to general unsecured creditors.

The principle is well established in this State that all property rights are acquired and held and all contracts, including those creating liens, are executed subject to the authority of the State to levy its taxes and to collect its revenues for the support of the government. 40 Tex. Jur. page 49 and page 203, (Taxation, Sections 31 and 145); 9 Tex. Jur. page 549 (Constitutional Law, Section 114); Wood v. Scott, 48 S.W. (2d) 1024; Kirk et al. v. City of Gorman, 283 S.W. 188; State v. Bank of Mineral Wells, 251 S.W. 1107; Preston v. Anderson County Levy Improvement District, 261 S.W. 1077; State v. Wynne, 133 S.W. (2d) 951.

The Constitution of Texas does not fix a tax lien upon any property except each tract or parcel of real estate for the particular taxes assessed against it. But the Constitution, being an instrument of limitation rather than of grant, and no limitation or prohibition appearing with reference to the fixing of other liens, the Legislature was free to act in the premises. Moreover, Article 8, Section 15, Constitution of Texas, provides that "All property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide." (Emphasis ours)

It was therefore competent for the Legislature to enact Article 7269, Revised Civil Statutes, and to thereby provide that in the contingencies stated, including an insolvent decedent's estate, such general delinquent taxes should, with named exceptions, become a first lien upon all of the property of the decedent, regardless of whether assessed against such property. The Legislature could have made such tax lien prior to all claims against an insolvent decedent's estate, but, in its discretion, determined that such tax lien should be "subject

to the allowances to widows and minors, funeral expenses and expenses of last sickness." But with these exceptions, the Legislature has declared that "the amount of such unpaid taxes shall be a _first lien_ upon all such property," and, under the authorities cited above, it is our opinion that such liens could lawfully be made prior and paramount to "claims secured by mortgage or other liens," described in the third classification of Article 3531, Revised Civil Statutes, even though such liens arose prior to the tax lien created by Article 7269, Revised Civil Statutes.

We think the opinion in Salt City Company v. Padgett, 186 S. W. 391, cited by you, to the effect that Article 7269, Revised Civil Statutes, did not operate to give precedence to a junior tax lien on personal property over a contract lien thereon, is pure dicta, because the tax lien in that case arose by virtue of a seizure of personal property rather than against an insolvent estate of a decedent, and the court itself stated that "the statute had no application to the facts of this case." If, however, this case cannot be so distinguished, it is our opinion that it has been overruled, in principle, by the cases cited herein, holding that the Legislature may make liens given to secure taxes prior to contractual and other liens.

In summation, it is our opinion that if the State and county ad valorem taxes involved in the instant case, were assessed against real estate of the decedent prior to his death, such taxes are secured by a prior lien upon the property against which the taxes were assessed; and such taxes should be paid by the administrator, regardless of whether the estate in question is insolvent, prior to any and all of the classes of claims set out in Article 3531, Revised Civil Statutes, or the payments directed by Article 3533, Revised Civil Statutes, and the Probate Court erred in classifying and ordering payment of such taxes on the basis of a third class claim under such statutes.

All other taxes due generally by decedent or his estate, upon any of the property of said estate, without reference to the particular property against which such taxes were assessed, were, such estate being insolvent, erroneously classified by the Probate Court as third class claims under Article 3531, Revised Civil Statutes, because such taxes are governed entirely by the provisions of Article 7269, Revised Civil Statutes, and thereunder, the only debts or claims which are

allowed a prior payment to such taxes are "allowances to
widows and minors, funeral expenses, and expenses of last
sickness." Such taxes would not be subordinated, in payment,
to "expenses of administration and expenses incurred in pre-
servation, safekeeping and management of the estate," classi-
fied under Article 3531, Revised Civil Statutes, as a second
class claim.

Moreover, all of these taxes would be secured by
liens upon the property of the estate, prior and paramount
to all contractual or statutory liens created or given to
secure debts in favor of individuals, regardless of the time
of their origin.

Trusting that the foregoing fully answers your in-
quiry, we are

APPROVED MAR 25, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:db

